Case number 145419, Inga Goodson v. Bank of America, North America. Arguments not to exceed 15 minutes per side. Mr. Ates for the appellant. May it please the court, John Ates for appellant Inga Goodson. I would like to reserve five minutes in rebuttal. This is a Fair Debt Collection Practices Act case in which there are three primary issues before you. Number one, did the district court misconstrue the complaint and the facts regarding the two primary claims Ms. Goodson has brought under Sections 1692E and 1692G of the Act? Secondly, this court, it's an open question to date as to whether equitable tolling applies to the FDCPA and whether the discovery rule applies to the FDCPA. Finally, the last issue is whether the district court erred in finding that the communications it did consider were not, quote, in connection with the collection of a debt in violation of the FDCPA. As to the first issue, the complaint generally outlines the communications at issue, and those ranged from August 2009 when Bank of America, specifically BAC Home Loan Servicing, Inc. first entered the picture. It entered the picture after Ms. Goodson obtained a loan from an entity called TBW. She wanted to obtain a loan modification, was told by TBW she needed to default in order to obtain the loan modification. She defaults. She stops making payments. The loan's in default. TBW's fraud begins to become uncovered. Jenny May, via whom this loan was issued and via whom this loan was packaged into a mortgage-backed security held by the Federal Reserve Bank of New York, which owned the loan and payments were due it, Jenny May defaults TBW. That means TBW can no longer act in regard to this loan. They do that in August of 2009. They then hire BAC Home Loan Servicing as a debt collector to begin servicing this loan, collecting any payments, which Bank of America says should have been remitted to the Federal Reserve as owner of the note and as the entity entitled to payments. BAC sends an initial communication to Ms. Goodson in August of 2009, identifying itself as a debt collector and identifying Jenny May as the creditor on the loan. Fast forward a little bit. Ms. Goodson is attempting to obtain a loan modification. Then in May of 2010, BAC, via its attorney Shapiro and Kirsch, sends Ms. Goodson the beginnings of the foreclosure process, a debt collection letter indicating her loan is in default, that SNK is attempting to collect the debt on behalf of BAC Home Loan Servicing. It identifies BAC as a creditor, not Jenny May. So at that point, she's received conflicting information as to who the creditor is? As to who the creditor is, but not as to the amount of her loan. Right, but the misinformation would be who the creditor was. At that point in time, that's correct, Your Honor. Why doesn't that put her on notice sufficiently for any statute of limitations to start to run? Because she had been working with BAC to obtain the loan modification and understood they had the authority over her loan. So at that point in time, there was not information to indicate any false or misleading information. Is it a contradiction? It is a potential contradiction, Your Honor. I thought it was a straight contradiction. Well, when these things are wrapped into an MBS, it's very difficult, even for courts and attorneys, to figure out who owns what. We're not talking about that you have your whole case laid out for you. We're talking about enough to start a statute of limitations. All you have to be is on notice that something's amiss. But there was nothing amiss as to the amount. You go forward through... The amount wrongly stated? At that point in time, it does not appear to be wrongly stated. So the crux of the misstatements in the August 9 letter and the May 10 letter was misidentification of the creditor, and there's clearly been some misidentification of the creditor by May of 2010. What I'm suggesting is that assuming you have a disclosure rule or a discovery rule, it's not discovery of the case all laid out for you. It's discovery of enough evidence that you know that there's been a violation. She doesn't... Right? She doesn't know... Most discovery rules, I mean, most generous discovery rules, once you find out there's a violation, then the time's going to start running. Right. Discovered a violation? She doesn't know the violation at that point. It identifies BAC as the creditor. In July, there's an affidavit and substitution of trustee document filed in the county land records, which would be a criminal offense, identifying BAC as the owner and holder of the loan. So at that point, Your Honor, there's no reasonable justification for her to believe that what she received in May was in violation of the statute because it's a criminal offense to file false information in the county land records. Then she gets information to indicate that the loan was foreclosed upon and the home sold in August of 2010. Then Bank of America obtains possession of the property, starts ejectment proceedings, files affidavits in the state case indicating they bought it for cash in August of 2010, indicating that they transferred the property to Ginnie Mae. It's only nine months to a year later that Bank of America then sends a letter in July of 2011, its initial debt servicing letter on behalf of BANA, indicating that Ms. Goodson owes $278,000 on her loan when it testified in the court that it bought the property for cash for $260,000. So it was only at that point that Ms. Goodson began to realize the fraud that was occurring in the state court action. She immediately seeks debt verification. In August of 2011, Bank of America, via its attorneys, sends a letter indicating no payment was made on that loan. Ms. Goodson files suit within one year of receiving that July 2011 letter, indicating the amount was wrong. It's at that point in time she begins to realize what was happening and Bank of America spills the beans finally in this case at its deposition in March of 2012 or 2013, indicating it has no record of paying anything of value for the loan. And so what we asked the court to do was apply equitable tolling, which it did. We contend it misapplied it because the heart of this case goes to the facts associated with whether Bank of America paid cash for that property or otherwise applied proceeds toward the loan as of the August 2010 foreclosure sale, which it testified to falsely in the state court proceedings. Was the home sold at foreclosure? Excuse me? Was the home sold at foreclosure? Bank of America has indicated. . . I'm asking you. I can't tell you because Bank of America said it didn't pay. . . It has no records of paying anything of value. You don't know whether there was a foreclosure or not? They've said there was a foreclosure. I'm asking you. I don't know.  They got possession of. . . The most we've gotten in this case, Your Honor, is the fact that Bank of America has no records of actually paying anything of value at foreclosure and certainly through the time period of this case. Even considering the July 2011 letter, that letter clearly is in connection with the collection of a debt. It is a communication required by Section 1692G of the Act. That is because this, remember, BAC was servicing this loan prior to July 2011. In July 2011, servicing rights go over to Bank of America N.A. So this is the first time B.A.N.A. is entering the picture, and it is required to send an initial communication letter under 1692G of the Act. That communication is in connection with the attempt to collect a debt. And the district court simply got it wrong when it held that that letter was not in connection with the attempt to collect a debt. And certainly the October . . . Now on the 2011 letter. Yeah, the July 2011 letter and the October 2011 letter and then the January 2013 communication, which indicates she owes $300,000-something on her loan. So our point is, regardless . . . We're in response to inquiries, though. Well, it sends this initial communication, Judge Rogers, because it has to under Section 1692G of the Act. It's a debt collector attempting to collect a debt. It has to send an initial communication letter. So Ms. Goodson receives that, then requests verification. Then Bank of America sends an oops letter. Oops, that's a mistake. And then sends the October 2011 letter, which gives this payment history. It was only that October letter that was sent in response to her request for verification. But again, that one, if it truly was a mistake that this first letter was a mistake, then they didn't need to send that verification letter. And if that first one was not in connection with the attempt to collect a debt, then it didn't need to send that October letter as well. So there's an affirmative defense within this statute that says if it's a mistake, you can plead that and try to prove it to get out from liability under this strict liability statute. Bank of America has not pled that in their defense. So, excuse me, in their answer. Is your client still in the home? She's in the home. And they've brought ejectment proceedings to get her out of the home. My understanding is the court ruled on summary judgment on that yesterday, Your Honor. I've not had time to digest that opinion yet. So whether she's in or out, I'm not sure. Yesterday she was in the home. Yesterday. So whether that changed as of today, I don't know. So I'd like to reserve the remainder of my time unless the panel has further questions. Good morning, Your Honors. Tammy Adkins on behalf of Bank of America. I want to talk for just a minute about what this case is about and what this case is not about. Before you get there, how exactly could there be a foreclosure sale and the bank have no clue as to what happened and whether there was any value given? I mean, what happened there? So the testimony by the Bank of America witness was really just saying she didn't know one way or the other because Shapiro & Kirsch, the foreclosure firm, was the one that actually had handled the foreclosure sale. And it may be true that cash wasn't paid at the foreclosure. What the testimony of the Shapiro & Kirsch witness in the related case where plaintiffs sued Shapiro & Kirsch for the same 2010 letter, in that case it was explained that it was a credit bid. If you think about it, if there's a foreclosure sale and somebody else is going to put in a bid and buy the property, then cash would be paid. But the point of the foreclosure sale from the bank or the creditor's purpose is to put in a bid itself to cut the former mortgagor out of the process so that you can have title free and clear. So Bank of America's representative, Shapiro & Kirsch, would show up at the foreclosure sale already being owed $260,000. And what the plaintiff is saying is that they should have come with a pocketful of $260,000 in cash to put in a bid for Bank of America and then take the money and put it in its other hand because it purchased the property. I mean, it's a net zero gain at that point. So that's the purpose of the credit bid instead. But what is difficult in this case is that Bank of America, at least as far as these proceedings were concerned, didn't seem to really know what had gone on there. And so that's a little disconcerting. Yeah, I believe, Your Honor, it was just because the 30B6 representative had not specifically looked into that issue and didn't know the answer. But throughout her testimony at a couple of different points, she says, I don't know the answer to that. And when she was asked, How could you find out? And she said, I would ask Shapiro & Kirsch how it proceeded. So that's the answer. So from this, you can see that whether there's something actually actionable from the 2010 foreclosure proceedings or whether that's active concealment or whether those are plaintiff's actual underlying claims that she's trying to assert, there's no fraud there with respect to whether the bank said that it was in cash or credit bid. And we would submit the documents that they're relying on doesn't even say that it was in cash. It says that it was put out for bid in cash, and then it was taken off, and Bank of America purchased the property, and Bank of America was the highest bidder. So once that happened, did that, with the exception of a deficiency, would that not have, in fact, stopped the running of this debt? Yes, Your Honor. So once the foreclosure occurred, it is true that plaintiff did not owe the debt any longer. What the purpose of the fact that there was still a balance shown on those 2011 letters and on the accounting statement is really just more of a Bank of America accounting and when do they book the loss and when does all of that happen. The Bank of America witness, at two different points, indicated that the reason there was still a balance owed was because its process wasn't complete. They hadn't been able to evict the plaintiff yet, and so HUD wouldn't take possession of the property, so they couldn't settle up the books. That doesn't mean that Bank of America was seeking to collect from plaintiffs. Maybe they were acting in good faith. I mean, these things are so complicated, it's believable. But it does seem like these two letters said things like, you still owe money when she didn't still owe money. Is that right? Well, it is true. And she didn't really owe money. Right. The July 2011 letter states a balance. That's the bank's, hello, we're your new servicer letter, and it does state a balance. This is how much you owe. Yes. She didn't know that. Right. Our contention on that one is that that letter wasn't actionable, though, under the FDCPA because it wasn't in connection with the collection of a debt. When you actually look at... That's the weakest part of your argument. Maybe you have a good argument, but it's hard for me to see why that isn't problematic. Well... Other things you can say, well, you know, a debt credit bid is the same as a cash bid, and she wasn't paying and so forth. But here she's getting a notice which says you owe when, in fact, she doesn't owe. And it's from a debt collector, right? It has a sentence in there saying we're a debt collector and you owe this money. Right. What's the theory for why that isn't a violation? Well, because it's not a communication in connection with the collection of a debt, as this court has interpreted it in the Gurdon case. Common parlance, you would say it was in connection. Well, if you look at the factors, there was no demand for payment. There was no... A letter from your creditor saying you owe this much is, in our presence, not a demand. Yeah, Your Honor, and also the Seventh Circuit's law in Bailey and Birkin. Why wouldn't creditors who wanted to evade the act, why wouldn't they just send letters saying you owe us this money? Well, I disagree that the letter actually is saying you owe this money, because it is not, Your Honor, it's not actually... It doesn't say you owe us this money? It's not talking about a payment time frame, any repercussions of what would happen if you don't pay. That letter is just a hello, we're your new servicer. There's no repercussion language in there? No. And, Your Honor, under Gurdon and the Bailey case and all of these cases about whether something actually is in connection with the collection of a debt, they look at all of these factors and what were the circumstances. What's the purpose of all those factors? Is that just to educate myself here? Is that to allow creditors to give out information without being subject to the act? I mean, I'm not seeing why the act would want to say that writing a letter to a debtor from a creditor or from someone who's collecting a debt for a creditor and says you owe this much amount of money to thus and such wouldn't be something in connection with debt collection. Right. To be actionable under 1692E or F or any of the provisions that actually require the communication to be in connection with the collection of a debt, you have to look at the factors to determine whether it really was debt collection or if it was just information or a ministerial. And in the Gurdon case, the Gurdon case is actually on all fours, at least with the October letter because it says if it's just a ministerial, in that case a ministerial response to a debtor inquiry, which that October letter was. You're talking about the July letter. Yeah, the July letter. Well, in that case, that situation is actually even less of an attempt to collect the debt. I mean, you have to look at the entire circumstances and whether the animating purpose of the letter was to actually get a payment. So the fact that a balance was stated could be merely informational, which was the case in the Bailey case from the Seventh Circuit. It was just wanted to let you know here's the state of your debt. I mean, even in— They don't owe you anything. What is the animating purpose of sending a letter to someone who doesn't owe you anything? Because the animating purpose of that letter was to say BAC Home Loan Services has merged into Bank of America N.A., and we just wanted to let you know Bank of America is your new servicer. That's something that would have been required by the FDCPA and by RESPA to identify that you're the new creditor. They would have been in violation if they didn't send that letter. They don't owe any money. That letter was sent after the foreclosure sale. Yes, it was sent after the foreclosure sale, and it did state the balance that was on the account, which was an error. About four days later, the bank sent a letter to the plaintiff saying it was an oops letter. Sorry, you may have received this letter. It was received in error. Here's what it says. You received a letter that was sent in error in connection with your prior home loan account noted above. If you look at the animating purpose of that letter, it was around July 13th. That's not the October 7th letter. I was asking about the July 11th letter. Your response responded to my question, but it doesn't respond to the October question. The October question, if you look at the way Gurdon interprets this, you have to look at the animating purpose of the letter. Even if the letter didn't state a particular amount or make a demand, you can still look at the entire circumstances. Here, if you look at the entire circumstances, the bank wasn't trying to collect a debt from her. We know that the bank didn't. The foreclosure had already happened. She didn't owe the money. The bank had sent a letter acknowledging that that was her prior home loan account, that she didn't owe any money. The bank's witness has indicated that it was just an accounting measure, that they can't clear off the books until the eviction has occurred and HUD will accept the property from them. If you look at all of those, there's no evidence that shows that the purpose of sending those letters was to actually collect money from her, and that's in connection with the collection of the debt. To be a violation under 1692 E or F, you have to... I don't understand how this act works. What if the purpose was to get money, they just made a mistake? I understand that's not the facts as the record reflects them according to you. Right. Let's say that I'm just trying to understand what the FDCPA does, Fair Debt Collection Protection Act. It protects against people suffering the angst or the pain of being harassed by people saying pay stuff that is not really what you're required to pay. The act is a broad remedial statute that is intended to keep debt collectors from harassing consumers or being misleading or deceptive, saying we're going to sue you when they really have no intention of suing you, that kind of thing. If they say you owe us $10,000 and they don't, you're just sending letters willy-nilly to people hoping that someone will actually pay it, that would be a violation, presumably. Well, I mean, in that situation, if there was an actual demand for payment, yes, that would be a violation here. It seems like if that is, you would think that being told that you owe money might cause the same harm that Congress was trying to avoid, but you're saying not. Well, I'm saying that this court in Gurdon has found that even, like as to the October 7th letter, it's completely on all fours with this case where a balance was stated. In this case, it was just a payment history was included. The letter itself doesn't even mention the balance. What it does is include all of the information that 1692G requires, which is what was the original amount of the debt, who was the original creditor, and including the payment history. Was that the one that was in response to the request? It was in response to her request where she specifically requested all of those items, and so that's what the bank sent in response. And Gurdon is on all fours with that. That's the October letter. That's the October letter. And in Gurdon, the same thing happened. It was a response to a 1692G validation request, and the court said that it was just merely a ministerial response to the debtor inquiry. Plaintiff is arguing, for the first time in his reply brief, he argued that the court should have looked at it under 1692G and that the mere fact that that letter was a validation request under 1692G should make it actionable. But that was not argued on summary judgment nor in the opening brief, and so we would argue that plaintiff waived that argument. But moreover, I would argue that Gurdon is exactly on all fours. That was a 1692G situation, and 1692G is a different situation to be actionable under that. It would be if we hadn't given any of the information she asked for and then the bank sent her collection demands, it would have not met the requirements of 1692G, and so it would have violated G. Here, the fact that the letter was in response to 1692G doesn't make it in connection with the collection of the debt, just as with Gurdon and also the Dubai case that the district court cited. As to whether any of this was pled in the complaint, that's the biggest issue here, is whether all of these things that happened in 2010, the eviction proceedings, the foreclosure, the foreclosure sale, plaintiff is saying that all of those things were in the complaint and they're just simply not there. In fact, plaintiff undermines the fact that he asserts that they're found in the penumbras of the vague allegations in the complaint by arguing that they didn't know until February 2013, a year after they filed the complaint, when they deposed Bank of America, that there was something mysterious that had happened with respect to the foreclosure sale. All along, the allegations about the foreclosure sale happening in the complaint are just a way to say, and therefore, these two letters from 2011 were wrong when they said we owed money, and that's the violation that the complaint includes. It simply does not include, and the case was never about all of these things that happened in 2011. It has always just been the four letters that are actually pled in the complaint. Thank you. Thank you, counsel. In regard to the July 2011 letter, counsel overlooks the fact that earlier in May, BAC had sent a letter to Ms. Goodson indicating that the servicing of her mortgage and, quote, the right to collect payments in connection with her loan, unquote, would transfer effective July 1, 2011, to Bank of America. It's in that context that this letter is sent indicating she owes $278,000 on a loan that Bank of America now contends was supposedly wiped out in August of 2010. If this letter is not deemed in connection with the collection of a debt, a huge hole is opened up in the FDCPA. He says it was opened by the Gurdon case. It wasn't opened by the Gurdon case. The Gurdon case did an animating purpose test, which is in somewhat tension with the 11th Circuit and 2nd Circuit. It follows the 7th Circuit's test. But an animating purpose of this communication was to inform her the amount she owed, it's required by, and she admits this in her argument before you today, that communication was required by Section G of the Act. And if this court holds an initial communication letter required by Section G of the Act, it's not covered by the Act, then you are writing out Section G of the Act and Section E of the Act because what you are saying is somebody can send these letters willy-nilly indicating whatever amount they want to that a person owes could be false, misleading, and yet say it really wasn't meant to collect a debt. And moreover, this is a jury question. Excuse me, Your Honor? ...what an animating purpose is, though, right? That's what they really meant to do. I didn't write it. It is not a subjective test. That case did not go that far to say it's a subjective test to get into the mind of the debt collector to determine what they meant. A letter that says this is the new servicer on the debt, this is the amount of the debt, and then includes, as I think we've said, just including the required statutory language doesn't make that a collection attempt. That's an informational letter. Look at the letter that came before that, Your Honor. It said the right to collect the debt is transferred to BANA. It's transferred effective July 1. Sure. That letter... So now you know who you're dealing with. Right, and it's the right to collect the debt. So you're saying that there is no distinction between a right and an attempt to collect. What I'm saying is in the circumstances of this case, when you get that letter that says the right to collect the debt is transferring to somebody else, you then get the initial communication letter from that somebody else saying you owe X amount of dollars, which you don't owe. That's an attempt to collect the debt. Because if there was nothing owed, the letter should have never been sent. And here's why it is also an attempt to collect the debt. If I may. In that letter, it says if you don't dispute this, we will assume it's valid. So assume Ms. Goodson did not dispute the debt. That $278,000 is assumed the valid amount of the debt. The debtor must respond. But that was there for a very long time before anybody actually did something to collect it. I'm not understanding the import of the question. They were attempting to collect the debt the entire period. They had foreclosed. They were evicting her from the property. And they're sending her letters indicating she owes more on the loan than even they bought at foreclosure. We still don't know what she owes on that loan. They represent to you it's wiped out, but they didn't in the case. So you have to look at the whole thing together, not the individual letters as attempts to collect the debt. That's our point. Look at this in context. What's your best authority for that? Look at the whole wide, not the four individual letters that are complained of in the complaint. The Gurdon case itself, this is a jury question, and you have to put this in context. And it came up with these factors. You look at the relationship between the debtor and the debt collector. Is this the first time they're trying to collect the debt? Are they collecting it only post-default? Things of that nature. And so you have to put these attempts in context of the case to show these are all different pressure points and means to collect the debt from this debtor. And so I think it comes from Gurdon itself, but in connection with the collection of the debt, I think the strongest point is that July letter was required under the FDCPA. And so if you say it's not in connection with the collection of a debt, then it conflicts with the structure and language of the statute. So I see I'm out of time. Unless the court has further questions, we would ask you to reverse to allow the entire context of these events to be part of the 1692 E&G claims. Thank you, counsel. The case has been submitted. Clerk may call the next case.